```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE WESTERN DISTRICT OF TENNESSEE
                       WESTERN DIVISION
```
_____

AZMAN ENTERPRISES, INC. and    )
HUSSAIN "TONY" CHAGANI,        )
                               )
        Plaintiffs,             )
                               )
vs.                            )        No.  05-2349 V
                               )
CONOCOPHILLIPS COMPANY,        )
successor to Tosco Corporation )
by merger,                     )
                               )
        Defendant.             )
_____

    SUPPLEMENTAL ORDER ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
                         AWARDING DAMAGES
_____

     The plaintiffs, Azman Enterprises, Inc. and Hussain "Tony" Chagani (collectively "Azman"), filed a complaint against ConocoPhillips Company, alleging breach of a long term ground lease dated July 12, 1990 ("the Master Lease") and seeking a money judgment for unpaid rent, taxes, maintenance, and insurance under the Master Lease.  ConocoPhillips filed a counterclaim seeking reimbursement for payments that were inadvertently made under the Master Lease, which it claimed had been terminated by a Mutual Termination and General Release Agreement dated November 11, 2003 ("the Termination Agreement").  The parties consented to trial before the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).  On May 3, 2006, the court granted Azman's motion for

summary judgment and denied ConocoPhillips' cross-motion for summary judgment, finding that the Master Lease was not terminated by the Termination Agreement. The parties were directed to submit briefs on the amount of damages within ten days of the date of the order.[1] Oral argument on the issue of damages was held on June 13, 2006. For the reasons that follow, Azman is awarded $39,045.18 in damages.

## FACTUAL BACKGROUND

Pursuant to the court's directive, Azman submitted a brief outlining its calculation of damages totaling $282,298.64. Included in that total were: (1) past due rent from September 2004 to May 2006; (2) discounted present value of future rent from June 2006 to December 2008, the end of the current lease term; (3) past due real property taxes for 2004 and 2005; (4) discounted present value of future real property taxes for 2006, 2007, and 2008; (5) past due insurance premiums for 2004 and 2005; (6) discounted present value of future insurance premiums for 2006, 2007 and 2008; (7) past due maintenance expenses for September 2004 through May 2006; (8) discounted present value of future maintenance expenses

---

[1] The parties submitted five briefs including: (1) Azman's Brief on the Amount of Damages; (2) ConocoPhillips' Memorandum in Support of its Damages Calculation; (3) Azman's Reply; (4) ConocoPhillips' Sur-Reply; and (5) Azman's Response to the Sur-Reply.

for June 2006 to December 2008; (9) attorney fees and expenses; and (10) pre-judgment interest calculated at a rate of ten percent per annum. At the hearing, both parties agreed that ConocoPhillips had, in fact, paid rent in September and October 2004, which would decrease Azman's damages calculation for past rent due by $5,000. *See* Payne Aff., May 19, 2006, at ¶ 1.

In its brief on damages, ConocoPhillips argued that Azman is not entitled to any damages at all because Azman breached ConocoPhillips' right, as lessee, to quiet enjoyment and possession of the property as provided in the "Quiet Enjoyment" provision of the Master Lease. (Hr'g Ex. 1, ¶ 20.) In the alternative, ConocoPhillips argued that Azman is only entitled to $12,500, at most, under the "Lease Cancellation" provision of the Master Lease. (Id. at ¶ 22.) ConocoPhillips claimed that Jeffrey Payne's November 1, 2004 letter terminated the Master Lease by notifying Azman of CononoPhillip's intent to cancel the Master Lease and requesting possession of the property. The letter stated, in pertinent part:

> After extensive investigation and consultation with ConocoPhillips Legal, we have determined that our obligation to pay you rent under our Lease dated July 12, 1990 was terminated in December of 2003. I would like to take this opportunity to explain our position, and to offer alternatives to rectify the current situation.
>
> As you know, when you purchased the land in September of last year, you in effect became our Lessor. You still

3

> had the right to occupy and use the property under the Union 76 Dealer Station Lease and Motor Fuel Supply Agreement dated April 10, 2002. However, in December of 2003 you signed a Mutual Termination and General Release Agreement which became effective December 31, 2003. This Agreement terminated any rights you had to occupy the property.
>
> By remaining on the Premises, you have disavowed our rights to occupy the Premises under the terms of the master Lease. The only way for a Lessor-Lessee relationship to exist, entitling you to receive rent, would be for us to occupy and enjoy the full use of the property.

(Payne Aff., May 17, 2006, at Ex. 2.) The letter then went on to quote the "Quiet Enjoyment" provision of the Master Lease and offer Azman two alternatives: (1) keep the Master Lease in force and vacate the property or (2) enter into a mutual termination and release agreement and remain on the property. (*Id.*) Payne attached a Mutual Termination and Release Agreement for Azman's signature, which set forth an effective termination date of November 30, 2004. (*Id.* ¶ 7, Azman's Resp. To Sur-Reply at Ex. B.)

On November 10, 2004, Azman's attorney sent a letter in response rejecting the two settlement options presented in Payne's letter. The letter stated:

> Your assertion set forth in your letter of November 1, 2004 that my client has somehow breached the premises by remaining upon them is without merit. In addition, this is inconsistent with the position that ConocoPhillips has taken [in] the Memphis market with two (2) other dealers who were unable to purchase the property from the property owner but continued to occupy the premises under the sublease with ConocoPhillips.

(Payne Aff., May 17, 2006, at Ex. 3.)  The letter offered two other settlement options: (1) Azman would vacate the premises if ConocoPhillips entered into a sublease for $2,500 rent per month, plus an additional $9,000 rent per month for improvements to the property or (2) Azman would enter into a mutual termination of the Master Lease for a lump sum payment of $155,000. (*Id.*)  When questioned by the court at the hearing as to Azman's legal right to continue operating his service station on the premises when it had transferred the right to occupy the premises to ConocoPhillips as Lessee, Azman's counsel stated that Azman owned the fee and the improvements and ConocoPhillips had withdrawn from the area.

## ANALYSIS

At the hearing, the parties disputed whether Jeffrey Payne's November 1, 2004 letter terminated the Master Lease, and, if so, whether it terminated the lease under its "Lease Cancellation" provision or its "Quiet Enjoyment" provision.  Clearly, the termination of the Master Lease and the termination date would affect the court's determination of damages.  In addition, as ConocoPhillips correctly pointed out at the hearing, because the court found that the Master Lease remained in existence following the November 11, 2003 Termination Agreement, the court's determination of damages also depends upon the parties' specific obligations under the Master Lease.  These two issues are addressed

5

separately below.

A.  <u>Whether Payne's Letter Terminated the Master Lease and Under What Provisions</u>

ConocoPhillips argued that Jeffrey Payne's November 1, 2004 letter terminated the Master Lease either under the "Lease Cancellation" provision, paragraph 22 of the Master Lease, or under the "Quiet Enjoyment" provision, paragraph 20 of the Master Lease.

Under paragraph 22, the "Lease Cancellation" provision, ConocoPhillips has the unilateral right to terminate the lease at any time by giving thirty days prior written notice and paying a certain amount as consideration for the termination. The "Lease Cancellation" provision provides:

> LEASE CANCELLATION. Lessee shall have the right to terminate this Lease or any renewal or extension hereof, at any time, by giving Lessor thirty (30) days prior written notice of Lessee's intention to do so, and paying to Lessor as consideration for said termination an amount which shall be determined by multiplying the current monthly rental by the number of years then remaining before the expiration of the current term of this Lease.

(Hr'g Ex. 1, ¶ 22.) At the hearing, Azman argued that ConocoPhillips did not fulfill the termination requirements of paragraph 22 because it did not tender the cancellation amount of $10,000, the monthly rental fee of $2,500 multiplied by the four years remaining on the current lease term, to Azman.

The court agrees with Azman that ConocoPhillips did not complete the appropriate steps to terminate the Master Lease under

6

the "Lease Cancellation" provision. It is undisputed that ConocoPhillips failed to tender or pay to Azman the amount due in consideration of termination under the "Lease Cancellation" provision, which would have been $10,000. Therefore, ConocoPhillips did not terminate the Master Lease under the "Lease Cancellation" provision.

In the alternative, ConocoPhillips argued that Payne's November 1, 2004 letter terminated the Master Lease under paragraph 20 of the Master Lease, the "Quiet Enjoyment" provision. The Master Lease expressly sets forth a covenant of peaceable and quiet enjoyment and possession of the premises. In the event of a breach of the covenant of quiet enjoyment that is not promptly corrected, ConocoPhillips could terminate the Master Lease. The "Quiet Enjoyment" provision provides, in relevant part:

> QUIET ENJOYMENT. Lessor covenants and warrants that Lessor is well seized of and has full right and authority to lease the Leased Property to Lessee, agrees to defend the title thereto, and warrants that Lessee shall at all times during said term, and any renewal or extension hereof, have peaceable and quiet enjoyment and possession of said premises without let or hindrance from Lessor or any person whomsoever, the breach of which covenant by operation of law or for any other reason, even if affecting only a portion of the Leased Property, if not promptly corrected, shall entitle Lessee, at its option, to terminate this Lease and to remove its equipment and all improvements from the Leased Property.

(Hr'g Ex. 1, ¶ 20.) At the hearing, ConocoPhillips argued that, according to its terms, the Master Lease was terminated when

ConocoPhillips requested possession of the property and Azman refused to provide such possession. ConocoPhillips noted that it did not need to remove any equipment or improvements, because they had been sold to Azman.

The court agrees with ConocoPhillips that the Master Lease was terminated under the "Quiet Enjoyment" provision. Although ConocoPhillips was not in possession of the property for quite some time, Payne's November 1, 2004 letter served as notice that ConocoPhillips wished to obtain possession if the Master Lease were to remain in effect. Azman's November 10, 2004 letter in response effectively denied ConocoPhillips the right to quiet enjoyment and possession of the premises as provided in the Master Lease. Although the Master Lease provided that ConocoPhillips had the right to quiet enjoyment and possession with the payment of $2,500 rent per month, Azman only offered to yield possession of the property to ConocoPhillips if it agreed to pay an additional $9,000 in rent per month.

ConocoPhillips argued that the Master Lease therefore terminated on November 30, 2004, the effective date of the Mutual Termination and Release Agreement that Payne attached to his November 1, 2004 letter. (Mem. In Supp. Of ConocoPhillips Company's Damages Calculation at 7-8.) Under the "Quiet Enjoyment" provision of the Master Lease, Paragraph 20 states that if a breach

8

of the covenant of quiet enjoyment and possession is not promptly corrected – and it was obviously not corrected here because Azman remains in possession of the premises – then ConocoPhillips had the unilateral right to terminate the Master Lease and remove its equipment and improvements.  ConocoPhillips therefore did not need to obtain Azman's consent to terminate the Master Lease.  Even though Azman refused to sign the proposed Mutual Termination and Release Agreement, his refusal does not preclude the Mutual Termination and Release Agreement from being effective as a termination of the Master Lease because Azman's consent was not required.  Therefore, the court finds as a matter of law that ConocoPhillips was entitled to and did in fact terminate the Master Lease under its "Quiet Enjoyment" provision effective November 30, 2004, after Azman refused to yield possession of the premises to ConocoPhillips upon its request.

B.    Specific Damages Under the Master Lease

Having determined that the Master Lease was terminated effective November 30, 2004, the court must now determine the specific damages available to the parties under the Master Lease.

1.    ConocoPhillips' Damages

ConocoPhillips argues that it is entitled to damages for Azman's breach of the covenant of quiet enjoyment and possession. (Mem. In Supp. Of ConocoPhillips Company's Damages Calculation at

6-7.) ConocoPhillips, however, did not include such a claim in its counter-complaint, which sought only reimbursement for overpayments under the Master Lease and costs of bringing the action. (Ans. & Counter-Compl., 5-6.) Therefore, the court finds that ConocoPhillips is not entitled to damages for Azman's breach of the covenant of quiet enjoyment and possession or to attorney fees and expenses.

   2.  Azman's Damages

Azman is entitled to only a portion of the damages it asserted in its brief, as discussed below.

   a.  Past Due and Future Rent

In its brief on damages, Azman requested $2,500 a month in rent from September 2004 to December 2008. The parties agreed at the hearing that ConocoPhillips did in fact pay rent in September and October 2004. Because ConocoPhillips terminated the Master Lease effective November 30, 2004, Azman is only entitled to past due rent in the amount of $2,500 for the month of November 2004. Azman is not entitled to any further damages for rental payments.

   b.  Past Due and Future Taxes

Pursuant to the Master Lease, ConocoPhillips agreed to pay all general real estate taxes and special assessments on the property during the term of the Master Lease. (Hr'g Ex. 1, Addendum to Lease, ¶ 4.) The lease further provides that "[s]uch taxes shall

10

be prorated between Lessee and lessor during the first and last years of this Lease as of the Commencement Date and expiration date of this Lease, respectively." (*Id.*)

In its brief on damages, Azman requested $12,000 per year for past due and future taxes beginning in 2004. In its brief on damages, ConocoPhillips acknowledges that it has paid real property taxes over the years, but states that it has never paid the amount of $12,000 per year in real estate taxes.

Despite ConocoPhillips' position that it has never paid the amount of $12,000 in taxes during past years, it has previously admitted that $12,000 per year is owed in real property taxes. In the complaint, Azman alleged that the Master Lease "is the standard commercial triple net lease requiring lessee ConocoPhillips to pay the real estate taxes, maintenance, and insurance. Real estate taxes are currently $12,000.00 per year and the insurance is currently $7,000.00 per year." (Compl. ¶ 9.) In its answer, ConocoPhillips stated "ConocoPhillips admits the allegations in paragraph 9 of the Complaint." (Ans. ¶ 9.) Therefore, the court finds that the amount of real property taxes owed per year is undisputed and is $12,000. Because the Master Lease was terminated on November 30, 2004, the amount of 2004 property taxes must be prorated. ConocoPhillips is responsible for the taxes for eleven months of 2004, January 1 through November 30, in the amount of

11

$11,000.

ConocoPhillips asserted in its brief on damages that it had already paid $4,804 toward 2004 real property taxes. (Mem. In Supp. Of ConocoPhillips Company's Damages Calculation at 12.) In support of its position, ConocoPhillips submitted the affidavit of Jeffrey Payne who stated under oath that "ConocoPhillips paid $4,804.00, toward taxes for 2004." (Payne Aff., May 17, 2006, at ¶ 2.) Azman has not presented any sworn proof to the contrary. Therefore, the court finds it undisputed that ConocoPhillips has paid $4,804.00 toward the 2004 real property taxes.

At the hearing, ConocoPhillips argued that it was not required to pay any past due property taxes because Azman failed to provide notice as required by the Master Lease, which provides:

> In the event Lessee fails to pay any tax or assessment for which it is obligated, Lessor shall pay same and shall submit said tax notice and paid tax bills within six (6) months after payment of such taxes to Lessee for reimbursement. Lessor's failure to request reimbursement from Lessee as set forth above shall nullify Lessor's right to collect same from Lessee but shall not nullify Lessee's obligation to pay future taxes as set forth above.

(Hr'g Ex. 1, Addendum to Lease, ¶ 4.) Azman argued that filing the complaint, which alleged failure to pay taxes, constituted the required notice. The court finds as a matter of law that the filing of the complaint in April 2005 constituted the requisite notice.

12

Accordingly, the court finds that Azman is entitled to $6,196.00[2] in damages for past due taxes through November 30, 2004. Because ConocoPhillips terminated the Master Lease on November 30, 2004, Azman is not entitled to any further damages for taxes beyond that date.

    c.   <u>Past Due and Future Insurance Premiums</u>

In its brief on damages, Azman requested $7,000 per year for past due and future insurance premiums, starting in 2004. In its brief on damages, ConocoPhillips asserted that no provision in the Master Lease requires ConocoPhillips to pay for insurance. In his affidavit, Jeffrey Payne states that "[t]here is no specific provision in the Master Lease which requires ConocoPhillips to pay insurance premiums on the Property. At no time during the term of the Master lease did ConocoPhillips pay insurance premiums on the Property." (Payne Aff., May 17, 2006, at ¶ 3.) However, despite ConocoPhillips' assertions in its brief on damages, ConocoPhillips has already stipulated to the contrary. ConocoPhillips' statement of undisputed material facts stated: "Pursuant to the ground lease, ConocoPhillips was required to pay the real estate taxes, maintenance and insurance." (Mem. In Supp. Of Def.'s Resp. In Opp'n to Pls.' Mot. for Summ. J. And Its Cross-Mot. for Summ. J. at

---

[2] This is $11,000 less the $4,804 that ConocoPhillips already paid for 2004 taxes.

4.)  In addition, ConocoPhillips admitted the allegations in paragraph 9 of Azman's complaint, which stated that the Master Lease "is the standard commercial triple net lease requiring lessee ConocoPhillips to pay the real estate taxes, maintenance, and insurance.  Real estate taxes are currently $12,000.00 per year and the insurance is currently $7,000.00 per year." (Compl. ¶ 9; Ans. ¶ 9.)

Because ConocoPhillips stipulated to the fact that it was required to pay insurance premiums under the Master Lease and that the insurance premiums were $7,000 per year, Azman is entitled to damages for past due insurance premiums for 2004 through November 30, 2004.  Accordingly, the court finds that Azman is entitled to $6,416.67 in damages for eleven months of past due insurance.  Because ConocoPhillips terminated the Master Lease on November 30, 2004, Azman is not entitled to any further damages for insurance beyond that date.

    d.   <u>Past Due and Future Maintenance</u>

The Master Lease contains a provision for maintenance costs to be paid by ConocoPhillips.  It provides:

> MAINTENANCE & REPAIR.  Lessee agrees, during the term of this Lease and any renewal terms hereof, to maintain and repair all buildings, improvements and equipment on the Leased Property, at its expense, in compliance with applicable statutes, ordinances, rules and regulations.

(Hr'g Ex. 1 at ¶ 13.)  As noted above, ConocoPhillips admitted in

its answer and in its statement of undisputed material facts that it is required to pay maintenance under the Master Lease. However, no amount was specified, and ConocoPhillips did not admit or stipulate to an amount owed.

In its brief on damages, Azman requested $700 per month for maintenance, starting in September 2004. Unlike the real property taxes and the insurance premiums which are fixed amounts, the maintenance expenses vary month to month. The amount of $700 is the average monthly maintenance expense estimated by Tony Chagani based on his experience. (Chagani Aff., May 9, 2006.)

ConocoPhillips asserted and Payne stated under oath, however, that any maintenance expenses it had paid in the past were paid pursuant to maintenance provisions of the Dealer Agreement, not the Master Lease. (Payne Aff., May 17, 2006, at ¶ 4.) In addition, at the hearing, ConocoPhillips argued that its obligation to pay for maintenance under the Master Lease is limited to maintenance required by law and does not include regular upkeep of the premises.

Azman has failed to present any sworn proof that the maintenance expenses it claims were owed by ConocoPhillips were required to comply with applicable statutes, ordinances, rules, and regulations. Accordingly, Azman is not entitled to summary judgment on its claim for damages for maintenance expenses and is

15

therefore not entitled to any damages for maintenance expenses. Even if it were, Azman would only be entitled to $2,100 for three months of past due maintenance from September 2004 to November 2004.

    e.    <u>Attorney Fees and Expenses</u>

The Master Lease provides that the prevailing party shall be entitled to receive its reasonable attorney fees and costs in connection with any litigation arising out of the Master Lease. (Hr'g Ex. 1 at ¶ 31.)  Azman has prevailed in this litigation.

In its brief on damages, Azman requested $23,837.91 in attorney fees and expenses. In support of its request, Azman filed the affidavit of Michael Richards, the lead attorney for Azman, and an itemized list of services rendered. The itemized list indicates that Azman's attorney Michael Richards billed a total 64 hours on the case at a rate of $320.81 per hour, and Azman's attorney Elizabeth Moccaldi billed a total of 15.60 hours on the case at a rate of $160.00 per hour, for a total of $23,028.00 in attorney fees. The itemized list also indicates that there were $809.91 in expenses such as payment of the filing fee, service of summons, and photocopying and shipping charges.

The court finds that such fees and rates are reasonable. The court also finds that such expenses are reasonable. Therefore, Azman is awarded a total of $23,028 in attorney fees and $809.91 in

expenses.

    f.   <u>Pre-Judgment Interest on the Damage Awards</u>

In its brief on damages, Azman requested pre-judgment interest at a rate of ten percent per annum. At the hearing, Azman acknowledged that an award of pre-judgment interest is in the discretion of the court as is the interest rate used by the court.

In order to award pr-judgment interest, the court must first know the precise date the payment in question was due. According to the Master Lease, rent was to be paid in advance on the first day of each month. Thus, the November 2004 rental payment in the amount of $2,500 was due on November 1, 2004, and the court will award pre-judgment interest on the rental payment from that day forward. As to the payments for taxes and insurance premiums, it is unclear when such payments would have been due. Therefore, the court in its discretion declines to award pre-judgment interest on those payments.

In calculating pre-judgment interest on the rental payment, the court will use the method for calculating the post-judgment interest rate on money judgments received in federal court as set forth in 28 U.S.C. § 1961 for the period when the rental payment was due. Using the federal post-judgment interest rate for the week of October 29, 2004, Azman is entitled to 2.27% per annum of the $2,500 award for 20 months. Therefore, Azman is awarded $94.60

17

in pre-judgment interest on the past due rent.

CONCLUSION

Accordingly, Azman is awarded a total of $39,045.18 in damages as follows: (1) $2,500 for past due rent for November 2004; (2) $6,196 for past due taxes in 2004; (3) $6,416.67 for past due insurance in 2004; (4) $23,837.91 in reasonable attorney fees and expenses; and (5) $94.60 in pre-judgment interest.

IT IS SO ORDERED this 10th day of July, 2006.

                                           s/ Diane K. Vescovo  
                                           **DIANE K. VESCOVO**  
                                           **UNITED STATES MAGISTRATE JUDGE**